Joe **STEWART et al., Plaintiffs-Appellees, Cross-Appellants,**

v.

**GENERAL MOTORS CORPORATION, Defendant-Appellant, Cross-Appellee.**

Nos. 76–1079, 76–1080.

United States Court of Appeals, Seventh Circuit.

Argued April 15, 1976.

Decided Oct. 4, 1976.

Rehearing and Rehearing En Banc Denied Dec. 3, 1976.

446

Thomas R. Meites, Freda R. Merritt, Chicago, Ill., for Joe Stewart.

Michael A. Warner, Chicago, Ill., for General Motors.

Before SWYGERT and SPRECHER, Circuit Judges, and CAMPBELL, Senior District Judge.[1]

SWYGERT, Circuit Judge.

This action was brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* and 42 U.S.C. § 1981, and concerns claims of racial discrimination in hiring and promotion against General Motors Corporation at its Broadview, Illinois Parts Distribution Center. Plaintiffs are black employees representing the class of black people who have been employed at this facility in hourly rated positions since December 21, 1973. Plaintiffs claim that discrimination exists at the Broadview plant with respect to: (1) promotions to the position of hourly clerk, the most desirable of the hourly rated jobs; and (2) promotions to salaried positions.

Charges were filed before the Equal Employment Opportunities Commission (EEOC) in June 1972 and an action was commenced in the District Court for the Northern District of Illinois in August 1973. The district judge found that defendant's promotional practices violate section 703 of Title VII, 42 U.S.C. § 2000e–2. Accordingly, he issued an injunction designed to prevent future racial discrimination in promotions to the position of hourly clerk and to salaried positions.

 In reviewing the district court's decision, we are bound under Fed.R.Civ.P. 52(a) to accept findings of fact unless they are clearly erroneous. *Prince v. Packer Mfg. Co.,* 419 F.2d 34, 36 (7th Cir. 1969). The statement that discrimination exists for the purposes of establishing liability under Title VII, however, is as much a conclusion of law as a finding of fact. A distinction must be drawn between subsidiary

facts to which the "clearly erroneous" standard applies, and the ultimate fact of discrimination within the meaning of Title VII, which is the decisive issue to be determined in this litigation. *East v. Romine, Inc.,* 518 F.2d 332, 338–39 (5th Cir. 1975). Accordingly, we will make an independent examination of whether defendant's conduct constitutes a violation of Title VII.

*I. Discrimination in Promotions to Hourly Clerk Positions*

 The district court found that the position of hourly clerk is the most desirable hourly job at the Broadview plant, both because it is highly paid and because it is considered a stepping stone to salaried positions. It also found that at the time this action was instituted, twenty-five percent of the workforce at the Broadview plant was black, while none of the twenty-seven hourly clerks were black. It then held as a matter of law that under the circumstances of the case these statistics created a prima facie case of discrimination under Title VII. We agree with this conclusion. Where statistical evidence demonstrates a discrepancy between the racial composition of those promoted to a given job and the pool of eligible applicants which is too great to reasonably be the product of random distribution, the burden should be placed on the employer to show that this disparity is the product of nondiscriminatory factors. *See United States v. Local 169, United Brotherhood of Carpenters,* 457 F.2d 210, 214 (7th Cir.), cert. denied, 409 U.S. 851, 93 S.Ct. 63, 34 L.Ed.2d 94 (1972); *Rowe v. General Motors Corp.,* 457 F.2d 348, 358 (5th Cir. 1972).

Defendant advances as an affirmative defense that it is utilizing a "bona fide seniority system," expressly exempted from liability under Title VII by 42 U.S.C. § 2000e–2(b), in filling hourly clerk vacancies. The district court found as a fact, however, that seniority often served only an ancillary role in determining promotions to the position of

---

1. The Honorable William J. Campbell of the United States District Court for the Northern District of Illinois is sitting by designation.

hourly clerk. Despite defendant's contention that this finding is contrary to the evidence, our examination of the record shows that it has ample support.

Since defendant has therefore failed to rebut the prima facie case which plaintiffs' statistical evidence makes out, we hold that its promotional practices with respect to the position of hourly clerk are discriminatory in violation of Title VII.

## II. Discrimination in Promotions to Salaried Positions

◼◼◼◼ Plaintiffs' case that discrimination existed in promotions to salaried positions is also based on statistical evidence. For example, prior to any legal pressure, only two out of ninety-seven salaried jobs were held by black people. As of the time of trial, twenty-one percent of the white employees at Broadview, compared with only nine percent of the black employees, held salaried positions. Given that the district court's statistical findings are supported by substantial evidence, we agree that the plaintiffs have again made out a prima facie case of discrimination.

Unlike its argument in the case of promotions to the position of hourly clerk, defendant does not contend that it is relying on a bona fide seniority system in filling vacancies for salaried jobs. Rather, it admits that promotions to the salaried workforce are awarded on a subjective basis which is intended to recognize merit. It then asserts that the district court's finding of a Title VII violation should be reversed because plaintiffs had failed to meet their burden of demonstrating that individual employees had been denied salaried positions because of racial discrimination.

Defendant's argument misconceives the nature of what must be proved to show discrimination under Title VII. For plaintiffs to prevail, it is not necessary that they prove scienter by showing that in individual cases General Motors consciously excluded black employees from salaried positions simply because of their race. Rather, they need only show that black employees as a group were promoted at a significantly low-

er rate than white employees. At that point, as we stated earlier, the burden would be on the defendant to demonstrate that racial disparity was the product of nondiscriminatory factors. The Supreme Court has defined this burden in the following way:

> The Act proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation. The touchstone is business necessity. If an employment practice which operates to exclude Negroes cannot be shown to be related to job performance, the practice is prohibited. *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971).

General Motors has failed to meet this test. The district court characterized the promotion process with respect to salaried jobs as "highly subjective and loosely structured." It noted that supervisory recommendations play an important role in the promotion process, but that no significant safeguards exist to ensure that the recommendations are focused on the relevant issues in promotion. Foremen asked to make recommendations have no objective way of rating the employees whom they are evaluating. Moreover, they are never given written guidelines delineating the criteria for which they are supposed to be looking or describing the jobs for which they are making recommendations. Finally, almost all of the foremen at the Broadview plant are white.

We hold that such a system of filling vacancies is not job-related within the meaning of *Griggs*. The process described, while perhaps intended only to recognize merit, is highly susceptible to abuse. While some subjectivity is inevitable in filling jobs of an executive character, the total lack of objective standards at Broadview could only reinforce the prejudices, unconscious or not, which Congress in Title VII sought to eradicate as a basis for employment. In condemning promotional systems where employees of a minority race have been excluded by a process in which objective standards are lacking, we are in accord with a

number of other courts. *See, e. g., Muller v. United States Steel Corp.,* 509 F.2d 923, 929 (10th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975); *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 240–43 (5th Cir. 1974); *United States v. N. L. Industries, Inc.,* 479 F.2d 354, 368 (8th Cir. 1973); *Rowe v. General Motors,* 457 F.2d 348, 358–59 (5th Cir. 1972).

We therefore affirm the district court's holding that defendant's promotional practices with respect to salaried positions violate Title VII.

### III. Remedies

#### A. The District Court's Decree

■ The district court issued an injunction designed to prevent future racial discrimination in employment at the Broadview plant. We affirm all of the decree except for subsection (A)(1)[2] calling for vacancies in hourly positions to be filled by the employee with the highest seniority on the shift on which the vacancy occurs. The record shows that while about two-thirds of the hourly clerk's jobs are on the day shift, about two-thirds of the black hourly employees work on the night shift. Therefore, a rule that seniority can only be used to obtain a promotion within the same shift on which it was accrued will have the effect of locking a majority of the black employees who have suffered discrimination into an inferior status. Accordingly, the decree should be modified to call for vacancies in hourly clerk positions to be filled by the employee with the greatest seniority, regardless of on what shift he is working or accrued that seniority.

#### B. Backpay

#### 1. General Principles

Though plaintiffs asked for backpay as a part of the remedy to be imposed for a Title VII violation, the district court never addressed this issue. Since we find this claim to be meritorious, we remand this case to the district court with instructions to award backpay within the constraints of the guidelines which we will lay down.

■ In *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975), the Supreme Court held that:

> [G]iven a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purpose of eradicating discrimination throughout the economy and making persons whole for injuries suffered for past discrimination. (footnote omitted).

In the absence of special factors, therefore, backpay is to be awarded when a Title VII violation is found. Otherwise, there would be little incentive for employers to obey the statute; a recalcitrant employer could continue plainly discriminatory practices until compelled to stop by a federal court's injunction without suffering any penalty for his blatant disregard of the law. *Albemarle,* 422 U.S. at 417, 95 S.Ct. 2362. Moreover, backpay is necessary in order to effectuate the statutory goal of compensating the victimized employee and placing him in as good a position as he would have been had he not been subject to discrimination. *See Albemarle,* 422 U.S. at 418, 95 S.Ct. 2362; *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 252 (5th Cir. 1974).

■ The "special factors" which would prevent a backpay award have been narrowly construed, and usually include only circumstances where state legislation is in conflict with Title VII. They do not include the fact that the employer lacked specific intent to discriminate and therefore arguably was operating in good faith, or that the computation of the award will be difficult. *See Pettway,* 494 F.2d at 253–54, 260.

Defendant does not attempt to delineate any special factors which might support suspension of a backpay remedy in this

---

**2.** Subsection (A)(1) states in pertinent part:

Defendant is hereby ordered to fill all vacancies in hourly positions by offering the position to the employee with the highest seniority status on the shift at Broadview on which the vacancy occurs.

case. Rather, it asserts that backpay should not be awarded because "[t]he plaintiffs have failed to show a single employee who can claim he was injured by the Company's policies." This argument is nothing but an attempt to relitigate whether discrimination occurred at all, and we must reject it. Since our own examination of the record shows no special circumstances, we hold that the class which plaintiffs represent is entitled to backpay and proceed to a discussion of the mechanics of computing an appropriate award.

### 2. The Mechanics of the Award

■ The major difficulty in attempting to compute a backpay award in a case such as this one is that the subjectivity of defendant's method of filling job vacancies renders impossible anything like a precise calculation of the pecuniary effects of discrimination. In light of the uncertainty which clouds the task before us, we must set down three general rules: (1) unrealistic exactitude is not required; (2) ambiguities in what an employee or group of employees would have earned but for discrimination should be resolved against the discriminating employer; (3) the district court, far closer to the facts of the case than we can ever be, must be granted wide discretion in resolving ambiguities. *See Pettway*, 494 F.2d at 260–61; *United States v. United States Steel Corp.*, 520 F.2d 1043, 1050–55 (5th Cir. 1975).

■ It is with these rules in mind that he will discuss some of the problems that will face the district court on remand. The first issue which must be clarified is whether backpay should be awarded on an individualized basis to particular employees or on a classwide basis to be divided among the entire group which plaintiffs represent. Where possible, an individualized remedy should be utilized because it will best compensate the victims of discrimination without unfairly penalizing the employer. *See United States Steel,* 520 F.2d at 1055. In

the case of the discrimination in regard to promotions to the position of hourly clerk, it should be possible to make individualized awards based on the seniority of black employees. A black employee denied promotion who can show that he had more plant seniority[3] than a white employee given an hourly clerk's job should receive the difference in pay between what he did receive and what he would have received as an hourly clerk. While this method will not reconstruct what would have happened in the absence of discrimination, since seniority played only an ancillary role in determining who would fill hourly clerk vacancies, it will do as fair a job as any in compensating the victims of discrimination without granting them a windfall. Moreover, defendant should be estopped from objecting to such a remedy since it claims that promotions to these positions were in fact handled on the basis of seniority.

■ In determining the appropriate award to be made to black employees who were unfairly denied promotions to salaried positions, however, the utilization of an individualized method of calculation is impossible. Because General Motors had no objective standards by which to measure whether a given employee deserved a promotion, deciding in individual cases whether a particular person would have been promoted but for racial discrimination would lead the district court into a "quagmire of hypothetical judgments," *see Pettway,* 494 F.2d at 260, in which any supposed accuracy in result would be purely imaginary.

Therefore, it is necessary to use a classwide procedure in awarding backpay as compensation for defendant's failure to promote black employees to salaried positions because of their race. While such a method may generate a windfall for some employees who would have never been promoted had vacancies been filled on a nonracial basis and undercompensate the genuine victims of discrimination by forcing them to share the award with their undeserving

---

**3.** We wish to emphasize that total plant seniority, rather than seniority on any one shift, should be utilized in making this calculation.

brethren, it is the best that can be done under the circumstances. In any event, as Judge Tuttle has noted, "[a]ny method is simply a process of conjectures." *Pettway,* 494 F.2d at 261. Given a choice between no compensation for black employees who have been illegally denied promotions and an approximate measure of damages, we choose the latter. Moreover, there is precedent for such a choice both in this circuit and in others. *See Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711, 721 (7th Cir. 1969); *Pettway,* 494 F.2d at 259–61; *Johnson v. Goodyear Tire & Rubber Co.,* 491 F.2d 1364, 1375 (5th Cir. 1974); *Robinson v. Lorillard Corp.,* 444 F.2d 791, 801–02 (4th Cir.), *cert. dismissed,* 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971).

 Once a decision is made to use a classwide rather than an individualized remedy, the determination of which employees are entitled to be included in the class receiving backpay becomes crucial. The district court should place an initial burden on an individual employee to give a history of his employment at Broadview, to list the jobs he was denied because of discrimination and their pay rates, and to produce any evidence showing that he was qualified for those jobs. An employee attempting to make this showing should have access to any of defendant's records concerning the Broadview plant which he requires. Once this showing has been made, the burden shifts to General Motors to demonstrate by clear and convincing evidence that the employee would not have received those promotions because of factors unrelated to discrimination. *See Pettway,* 494 F.2d at 259; *Johnson v. Goodyear Tire & Rubber Co.,* 491 F.2d at 1379–80.

 The district court must then arrive at a method for calculating the amount which the class, now defined, is to receive. Courts confronting this issue have developed a number of techniques to approximate the monetary effects of discrimination. *See Bowe v. Colgate-Palmolive Co.,* 489 F.2d 896, 902 (7th Cir. 1973); *United States Steel Corp.,* 520 F.2d at 1055–56; *United States v. Local 416, Wire & Metal Lathers,* 328 F.Supp. 429, 443–45 (S.D.N.Y. 1971); *Stamps v. Detroit Edison Co.,* 365 F.Supp. 87, 121–22 (E.D.Mich.1973), *rev'd on other grounds sub nom., Equal Employment Opportunity Commission v. Detroit Edison Co.,* 515 F.2d 301 (6th Cir. 1975). We approve of the use of some variation of the "test period" approach utilized by this court in *Bowe.* The district court should trace over a period of time the history of a group of white hourly employees which is comparable to the group of black employees constituting the class receiving the backpay award. By determining which members of the control group achieved salaried status, how high within the salaried ranks they rose, and what their increases in salary were, it will be possible on remand to estimate for that period the increment in salary which the black hourly employees as a group would have earned had they been permitted to advance to salaried positions. This figure will serve as a benchmark for computation of the actual award.[4]

 The final step which must be taken in calculating both the individualized awards on the basis of seniority and the classwide award is to determine the appropriate period of time for which backpay is to be granted. Title VII contains an explicit statute of limitations for backpay liability, *see* 42 U.S.C. § 2000e–5(g), providing that backpay shall only accrue for a period beginning two years prior to the filing of a complaint before the EEOC.[5] Since plaintiffs demonstrated an ongoing course of discriminatory conduct by defendant prior to any action before the EEOC, the initial date of the period for which backpay is to be awarded should be set by the statute of limitations at exactly two years prior to the filing of the complaint before the EEOC in

---

4. This figure should be adjusted to avoid double counting of backpay accruing from denial of promotions to the position of hourly clerk, which will already have been accounted for in the individualized awards.

5. This statute of limitations is effective for all actions for which charges are filed before the EEOC after March 24, 1972.

June 1972.[6] The termination date of this period will be different for each type of backpay. Since the district judge refused to stay pending this appeal the pertinent parts of the decree dealing with promotions to the position of hourly clerk, the termination date for the individualized awards should be December 15, 1975, the date the decree was entered. He did stay those parts of the decree providing injunctive relief with respect to promotions to salaried positions, however, and the termination date for the classwide award should therefore be the date on which he vacates the stay after acknowledgment of the disposition of this appeal.

These dates will have different significance for the calculation of the final awards, depending on whether an individualized or a classwide procedure is being utilized. In computing backpay for employees who were unfairly denied promotion to the position of hourly clerk, the district court should compare the employment record of each hourly employee with company records to determine whether that employee was entitled to promotion on the basis of seniority during the period between June 1970 and December 15, 1975. If so, that employee should receive the difference between what he was paid and an hourly clerk's salary for the period between the time he should have been promoted and December 15, 1975.

■ In the computation of the classwide award, the specific beginning and ending dates of the appropriate period will be unimportant. Rather, the significant fact is that the period will be approximately six and one-half years long. The district court should reach a final figure by multiplying the increment in salary which the white control group earned during the test period by the ratio of six and one-half years and the length of the test period.[7]

■ The district court may employ the services of a special master in performing the calculations which we have outlined. *See Pettway,* 494 F.2d at 258. We would urge the parties to avoid the need for appointment of a special master, however, by negotiating an agreement pursuant to the principles we have outlined. *See Pettway,* 494 F.2d at 258; *Johnson v. Goodyear Tire & Rubber Co.,* 349 F.Supp. 3, 18 (S.D.Tex. 1972), *aff'd in part on other grounds,* 491 F.2d 1364 (5th Cir. 1974).

The judgment of the district court is affirmed except as noted in part III(A) of this opinion and the cause is remanded for further proceedings consistent with part III(B) of this opinion.

---

**6.** This is the date referred to by defendant. Plaintiffs note that while two of the named plaintiffs filed charges in June 1972, the third, Hatcher, did not do so until May 1973. We hold that the filing by two of the named plaintiffs in June 1972 was enough to satisfy 42 U.S.C. § 2000e–5(g).

**7.** A numerical example may help explain the process by which we are directing the district court to proceed. Suppose fifty black employees are admitted into the class which suffered discrimination in obtaining promotions to salaried positions. The district court should select a test group of fifty white hourly employees and designate a test period. Suppose it selects a test period of three years and finds that the test group earned an increment of $100,000 over that period by virtue of the promotion of some of the members to salaried positions. Finally, suppose the length of the backpay period, which cannot be precisely ascertained until remand, turns out to be exactly six and one-half years. The class of black employees would be entitled to an award of $100,000 multiplied by 2.17, the quotient of six and one-half years divided by three years, for a total of $217,000.

The district court might have to make further adjustments if it could not find a group of white employees exactly equal in number to the class of black employees or if some black employees were not in the recipient class for the full period between June 1970 and the revocation of the stay.