561 F.2d 1268
 15 Fair Empl.Prac.Cas. 930, 14 Empl. Prac.
Dec. P 7651,
15 Empl. Prac. Dec. P 7867
Willie WELLS, Ezell Jackson, William Lewis, Bennie Wells,
Louis Rankin and Jessie Clark, Appellants,
v.
MEYER'S BAKERY, Appellee.
 No. 76-1721.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 13, 1977.
Decided June 22, 1977.
As Amended June 30, 1977.
Rehearing and Rehearing En Banc Denied Aug. 15, 1977.
 
 John M. Bilheimer, Little Rock, Ark., for appellants; John W. Walker and Philip E. Kaplan, Little Rock, Ark., on brief.
 Kathlyn G. Farrar, Little Rock, Ark., for appellee; Robert S. Lindsey, Little Rock, Ark., on briefs.
 Before LAY, WEBSTER and HENLEY, Circuit Judges.
 LAY, Circuit Judge.
 
 
 1
 Plaintiffs, on behalf of themselves and other black persons similarly situated, brought this action against Meyer's Bakery[1] under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., alleging racially discriminatory employment policies were practiced by Meyer's Bakery. The district court denied relief to the individual plaintiffs on their private claims. However, the district court did find that defendant's recruitment, hiring, transfer and promotion[2] policies and practices were racially discriminatory. The district court granted injunctive relief to prevent future racial discrimination, but declined to award back pay to the class.
 
 
 2
 On appeal the plaintiffs urge that the district court erred in denying relief to three of the named plaintiffs on their private claims and to a member of the class, Willie Thompson. Plaintiffs also contend that the district court should have awarded back pay to the class and granted overall comprehensive injunctive relief. Meyer's Bakery has not appealed the district court's findings that its employment policies and practices were racially discriminatory.
 
 
 3
 Factual Background.
 
 
 4
 Meyer's Bakery is located in Blytheville, Arkansas, and employs approximately 225 persons, 30 per cent of whom are black. The bakery is divided into seven departments: production, sanitation, shipping, maintenance, clerical, sales and transportation. The district court found that, although technically separate, the departments of production, sanitation and shipping were treated as one large department (PSS) by Meyer's Bakery.
 
 
 5
 The evidence reveals that Meyer's Bakery through its recruitment and hiring practices routinely placed black applicants into PSS without regard for their qualifications, experience or preference for another department. There were no qualifications or requirements for positions in PSS, except being able-bodied, because all necessary skills would be developed on the job. The evidence demonstrates that while 30 per cent of the work force is black, all but three work in PSS. Of the 33 truck drivers all are white and in fact only one black person has ever been a truck driver. No black person has been employed as a salesman and only one of the seven employees in maintenance is black, and he is the first. Of the 10 clerical and office employees only one is black and he was hired after this lawsuit was brought.
 
 
 6
 Once a black employee was assigned to PSS, he was "locked in" by defendant's transfer and promotion practices. Vacancies in most departments were filled by a bidding system based on seniority. Vacancies in PSS were posted in the employees' lounge, but vacancies in maintenance and transportation were posted only within the respective department areas, which were generally off limits to PSS employees. This system greatly diminished the opportunity of a black employee with seniority assigned to PSS to bid on a vacancy in another department.
 
 
 7
 The opportunity for black employees in PSS to receive a promotion to a supervisory position was also limited by defendant's promotion practices. All supervisory personnel for PSS were selected by the plant manager without any predetermined standards to guide him or procedure for reviewing his decisions. In PSS there are approximately 12 to 15 supervisory positions, but within the last five years there have been 46 different supervisors due to turnovers. Of these 46 supervisors only four were black and three of them were eventually demoted. During this same period, 13 white supervisors were hired from outside the bakery, despite the company's policy of hiring from within. No black persons were hired from the outside as supervisors.
 
 
 8
 Based on this evidence the district court found that defendant's recruitment, hiring, transfer and promotion policies and practices were racially discriminatory in violation of Title VII. The district court ordered that all of defendant's employment practices and policies be conducted in a nondiscriminatory manner and required that all supervisory and job placement personnel receive written notification of this change in policy. The district court also required Meyer's Bakery to take affirmative action in encouraging minority applicants and to cease using "word of mouth" recruitment. Meyer's Bakery was also required to adopt written objective criteria for the evaluation of job applicants. However, the district court declined to award back pay to the class.
 
 
 9
 Back Pay Award.
 
 
 10
 On appeal plaintiffs urge that the district court erred in declining to award back pay to the class. Plaintiffs assert that an award of back pay is necessary to remedy the discrimination with respect to transfers between departments, promotion to supervisor in PSS, and the disparity in the hourly wage between the PSS and maintenance departments.
 
 
 11
 Prior to 1972 the top employees in PSS received the same hourly wage as the top employees in maintenance. However, in 1972 the Bakery and Confectionery Workers International Union (hereinafter Union), which represents all of the Bakery's employees, black and white, demanded and received higher wages for maintenance personnel. Plaintiffs claim that this wage increase had a racially disparate effect, since the maintenance department was historically white. The district court found that the wage increase was the result of a bona fide union demand for higher wages for skilled workers versus unskilled workers. The Union was originally joined as a defendant, but the action against it was dismissed and plaintiffs have not appealed that decision. All of the former and present black employees of Meyer's Bakery called as witnesses by plaintiffs testified that they had no complaint against the Union. Under these circumstances we agree with the district court's decision not to award back pay to the class based on the disparate wage claim. However, we find that the district court erred in not awarding back pay to remedy the results of defendant's discriminatory transfer and promotion practices.
 
 
 12
 The primary objectives of Title VII are to remove discriminatory employment barriers and "to make persons whole for injuries suffered on account of unlawful employment discrimination." Albemarle Paper Co. v. Moody, 422 U.S. 405, 417-18, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). In order to fashion the most complete relief possible, Congress has granted the federal courts comprehensive remedial powers. Back pay is a fundamental remedy and should be denied only in extraordinary circumstances. In this regard the Supreme Court has held:
 
 
 13
 It follows that, given a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination.
 
 
 14
 Albemarle Paper Co. v. Moody, supra at 421, 95 S.Ct. at 2373 (footnote omitted).
 
 
 15
 The district court declined to award back pay to remedy defendant's discriminatory transfer and promotion practices without carefully articulating its reasons. We have reviewed the record and find no special factors which would justify the denial. Neither the absence of any identified or identifiable black person who has been the victim of racial discrimination, nor the difficulty in computing a back pay award are special factors justifying the denial. Stewart v. General Motors Corp., 542 F.2d 445, 451-53 (7th Cir. 1976). Therefore we hold that the district court erred in refusing to grant back pay to remedy the effects of defendant's discriminatory transfer and promotion practices and remand to the district court the task of determining the mechanics of the award consistent with the guidelines set forth in the Seventh Circuit's decision in Stewart v. General Motors Corp., supra.
 
 
 16
 In order to give emphasis to the flexibility provided the district court under these guidelines we need set forth only the prelude to the Stewart guidelines:
 
 
 17
 The major difficulty in attempting to compute a backpay award in a case such as this one is that the subjectivity of defendant's method of filling job vacancies renders impossible anything like a precise calculation of the pecuniary effects of discrimination. In light of the uncertainty which clouds the task before us, we must set down three general rules: (1) unrealistic exactitude is not required; (2) ambiguities in what an employee or group of employees would have earned but for discrimination should be resolved against the discriminating employer; (3) the district court, far closer to the facts of the case than we can ever be, must be granted wide discretion in resolving ambiguities.
 
 
 18
 542 F.2d at 452.
 
 
 19
 Injunctive Relief.
 
 
 20
 Although the district court found defendant's recruitment, hiring, transfer and promotion practices to be in violation of Title VII, the injunctive relief awarded is directed at remedying only the recruitment and hiring practices. Besides the general admonition not to conduct or maintain employment practices and policies in a discriminatory manner, there is no injunctive relief directed at remedying defendant's discriminatory transfer and promotion practices.
 
 
 21
 To fashion complete relief the district court should, on remand, additionally require Meyer's Bakery to post vacancies for all departments in an area of the plant accessible to all employees. This would afford all employees with seniority, black and white, an equal opportunity to bid for a position. In addition Meyer's Bakery should be required to formulate written guidelines delineating the criteria to be used in evaluating job performance. The criteria must be job-related and while some subjectivity is required in evaluating job performance, objective criteria should be used to the maximum extent possible. See Rogers v. International Paper Co., 510 F.2d 1340, 1345-46 (8th Cir. 1975).
 
 
 22
 Plaintiffs also request that Meyer's Bakery should be required to meet a racial quota for each department. More appropriately, we feel our order of remand should require the district court to retain jurisdiction and fashion whatever affirmative remedy deemed necessary to eliminate all vestiges of discrimination in defendant's employment practices and policies. Therefore on remand we direct the district court to modify its decree to grant injunctive relief consistent with this opinion.
 
 
 23
 Individual Claims.
 
 
 24
 On appeal plaintiffs contend that the district court erred in denying back pay to three plaintiffs, Willie Wells, Louis Rankin and Bennie Wells, as well as to one class member, Willie Thompson. All four claim that they were either denied a transfer or a promotion on account of their race.[3] In view of our remand to the district court and our directive as to the award of back pay to the class in order to remedy the effects of the Bakery's discriminatory transfer and promotion practices, we vacate that portion of the district court's decree denying Louis Rankin, Willie Thompson and Willie Wells back pay. We direct that each be allowed to file a claim for back pay as a member of the class in accord with the Stewart guidelines.[4]
 
 
 25
 We sustain the district Court's determination that defendant's failure to reinstate Bennie Wells upon his return from military service was not racially motivated. Bennie Wells started working for Meyer's Bakery on August 19, 1969, and was scheduled to enter military service on August 17, 1970. Woodrow Hardesty, one of Wells' supervisors, gave Wells two weeks leave before he went into the service. The day before his leave was to begin, Wells hurt his ankle and was unable to work. He called Meyer's Bakery and talked to Leonard Harris, another of his supervisors. Harris told Wells to bring a doctor's statement when he returned to work. Since Harris was not informed that Hardesty had given Wells two weeks leave, Harris terminated Wells when he did not return to work the next day.
 
 
 26
 After serving his two years in the military, Wells would have been eligible for immediate reinstatement had he not been discharged. Because of the discharge, it was close to two years before Meyer's Bakery rehired Wells and then with a new seniority date. Wells now seeks back pay for the two years he was denied reinstatement and the restoration of his original seniority date.
 
 
 27
 Meyer's Bakery defense is that a mistake or "misunderstanding" occurred when Wells was not afforded his right as a veteran to immediate reinstatement. However, Meyer's Bakery urges, as the district court found, that the failure to reinstate Wells was not racially motivated. On the basis of the record before us we cannot say the finding of the district court was clearly erroneous.[5]
 
 
 28
 The cause is reversed and remanded for further proceedings and consideration in accord with this opinion.
 
 ON PETITION FOR REHEARING
 
 29
 PER CURIAM.
 
 
 30
 Defendant has filed a petition for rehearing on the ground that the guidelines adopted by this court for the award of back pay, as more specifically defined in Stewart v. General Motors Corp., 542 F.2d 445 (7th Cir. 1976), have now been rejected by the Supreme Court in International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). We must disagree. Although the denial of a writ of certiorari by the Supreme Court has no particular significance, the fact that certiorari was denied in Stewart on June 28, 1977, only four weeks after Teamsters was decided, cannot be overlooked. Furthermore, we find nothing in Teamsters contradictory of the flexible rules laid down in Stewart. The reasoning of Stewart in adopting class-wide relief is specifically applicable to the facts here. There Judge Swygert stated:
 
 
 31
 In determining the appropriate award to be made to black employees who were unfairly denied promotions to salaried positions, however, the utilization of an individualized method of calculation is impossible. Because General Motors had no objective standards by which to measure whether a given employee deserved a promotion, deciding in individual cases whether a particular person would have been promoted but for racial discrimination would lead the district court into a "quagmire of hypothetical judgments," see Pettway, (Pettway v. American Cast Iron Pipe Co., 5 Cir.), 494 F.2d (211) at 260, in which any supposed accuracy in result would be purely imaginary.
 
 
 32
 Therefore, it is necessary to use a classwide procedure in awarding backpay as compensation for defendant's failure to promote black employees to salaried positions because of their race.
 
 
 33
 542 F.2d at 452 (emphasis added).
 
 
 34
 Although class-wide relief for back-pay is granted, this court in adopting the guidelines of Stewart does not completely cast aside a formula for individualized relief. As the Seventh Circuit observed:
 
 
 35
 The district court should place an initial burden on an individual employee to give a history of his employment at Broadview, to list the jobs he was denied because of discrimination and their pay rates, and to produce any evidence showing that he was qualified for those jobs. An employee attempting to make this showing should have access to any of defendant's records concerning the Broadview plant which he requires. Once this showing has been made, the burden shifts to General Motors to demonstrate by clear and convincing evidence that the employee would not have received those promotions because of factors unrelated to discrimination. See Pettway, 494 F.2d at 259; Johnson v. Goodyear Tire & Rubber Co., 5 Cir., 491 F.2d 1364 at 1379-80.
 
 
 36
 The district court must then arrive at a method for calculating the amount which the class, now defined, is to receive.
 
 
 37
 542 F.2d at 453.
 
 
 38
 This approach is no different than that set forth in Teamsters, 431 U.S. at 365-368, 97 S.Ct. at 1870-71. Here the record demonstrates continuing discrimination and, as in Stewart, back pay relief to the individual members of the class may go back to two years from the filing of the complaint before the EEOC. 42 U.S.C. § 2000e-5(g).
 
 
 39
 Since this means of awarding back pay was not previously considered by the district court we direct that all members of the defined class should have a new opportunity to present their claims.
 
 
 40
 Rehearing denied.
 
 
 
 [1]
 Plaintiffs' complaint named Meyer's Bakery as the defendant; however, the defendant's correct corporate name is Meyer's Bakery of Blytheville, Inc
 
 
 [2]
 The parties disagree on whether the district court found that the policies and practices of Meyer's Bakery with respect to promotions to supervisory positions were discriminatory. However, we note that the district court specifically granted injunctive relief to prevent discrimination in promotions. The judgment states:
 (T)he evidence does warrant the Court in directing defendant Meyer's to proceed as hereinafter set forth.
 IT IS, THEREFORE, CONSIDERED, ORDERED AND DECREED THAT:
 (b) All hiring, assignment, promotions, transfers, dismissals and other conditions of employment . . . be maintained and conducted in a manner which does not discriminate on the basis of race . . . .
 (Emphasis added).
 
 
 [3]
 Willie Wells also asserts a separate claim of sex discrimination. He claims that he was unlawfully discharged on the basis of his sex. The district court found that he was discharged because of threats made to his supervisor along with a record of past intemperate conduct. The record shows this was the reason that the defendant refused to reinstate Wells. His actual discharge arose from leaving the plant without permission in order to take care of his injured stepson. Although his supervisor indicated to Wells that this was his wife's duty, we think the dispute was one which should have been handled through company-union grievance procedures and does not state a claim for relief under Title VII. We affirm the district court's finding as not clearly erroneous
 
 
 [4]
 The district court denied without explanation Willie Wells' claim that he was denied a job in the maintenance department because of his race. In support of the district court's decision, Meyer's Bakery asserts that Wells failed to show that there was an opening in the maintenance department and that he applied for that position. Meyer's Bakery did not dispute Wells' qualifications
 The record discloses that during Wells' term of employment that at least one and possibly as many as four white persons were hired by the maintenance department with the earliest being March 20, 1972. We find that Wells' request of his supervisor for information concerning a position in the maintenance department was a sufficient effort to apply for a maintenance position in light of the Bakery's employment practices which restricted information and discouraged inquiries concerning positions in the maintenance department. Cf. International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Wells' claim should be reconsidered on remand under guidelines set forth in Stewart v. General Motors Corp., 542 F.2d 445 (7th Cir. 1976).
 
 
 [5]
 In addition the record reveals that Bennie Wells had not filed a timely claim with the EEOC. Since Wells' individual claim is independent of the alleged class discrimination, he was obligated to make a timely filing as a prerequisite to bringing a Title VII action. See United Air Lines, Inc. v. Evans, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977)