REYNOLDS, Chief District Judge.
This is an appeal from a final judgment entered in an adversary proceeding commenced pursuant to Chapter XI of the Bankruptcy Act of 1898, eh. 541, 30 Stat. 544 (codified as amended at 11 U.S.C. §§ 1-1103 (1976) (repealed 1979)) (“Bankruptcy Act”). Lemmons & Company, Inc., a/k/a Warrick Mining Company, Inc. (“Lemmons”), the debtor, entered into a mining lease dated June 12, 1975, with Fred Graber and Fannie Graber (“the Grabers”), owners of land in Daviess County, Indiana. Lemmons filed a Chapter XI petition in bankruptcy in the United States District Court for the Southern District of Indiana, Evansville Division, on December 6,1976, and Frank J. Folz was appointed as Lemmons’ receiver.
The Grabers commenced the instant adversary proceeding on January 12, 1978, by filing a petition to declare forfeiture of the coal lease as against the receiver Folz. The petition was filed in the district court in which the Chapter XI proceeding was pending. A trial was held on January 17, 1979, the Honorable Gene E. Brooks presiding. On December 23, 1982, Judge Brooks entered findings of fact, conclusions of law, and judgment for Folz and against the Grabers, holding that the coal mining lease was enforceable. The Grabers filed a timely notice of appeal, over which this court has jurisdiction pursuant to 28 U.S.C. § 1293(b) (Supp. V 1981). We affirm the decision of the district court.
I.
On June 12, 1975, the Grabers leased certain land in Daviess County, Indiana, to *1066 Lemmons for coal-mining purposes. Lemmons filed its petition in bankruptcy on December 6, 1976. Folz, as receiver, eventually commenced mining under the lease through his agent, Four Rivers Coal Company, Inc. Lemmons and Folz made advance and earned royalty payments to the Grabers from time to time between June 9, 1976 and October 21, 1977, pursuant to the terms of the lease. The Grabers accepted all royalties paid.
The Grabers petitioned Judge Brooks on January 12, 1979, to declare the coal-mining lease forfeited on the ground that Lemmons failed to abide by the terms of the lease. Following a trial to the court on January 17, 1979, Judge Brooks took the matter under advisement.
On January 6, 1981, Judge Brooks sua sponte transferred the entire Lemmons Chapter XI proceeding to the Honorable Michael Kearns, Bankruptcy Judge of the newly created United States Bankruptcy Court for the Southern District of Indiana. Nevertheless, on December 23, 1982, Judge Brooks himself entered findings of fact and conclusions of law in the instant adversary proceeding under signature as district court judge. He then entered judgment on the same date as bankruptcy judge. Judge Brooks denied the Grabers’ petition to declare the lease forfeited, but provided in the judgment that the Grabers were entitled to royalties for coal mined under the terms of the lease.
II.
The issues presented on appeal are, first, whether Judge Brooks retained subject matter jurisdiction over this adversary proceeding after transferring it sua sponte to the United States Bankruptcy Court, and, second, whether Judge Brooks’ findings of fact are clearly erroneous under Rule 52 of the Federal Rules of Civil Procedure.
The Grabers contend that Judge Brooks’ sua sponte transfer of the case to the bankruptcy court divested himself as district judge of subject matter jurisdiction over the proceeding. The Grabers compare this case to one which is reassigned to a new judge after the original judge has disqualified himself — a circumstance that transfers all jurisdiction. According to the Grabers, by transferring the proceeding to Bankruptcy Judge Kearns, Judge Brooks became “disabled” from hearing the case, a “disability” comprehended by Rule 63 of the Federal Rules of Civil Procedure.[1]
The argument of the Grabers on this jurisdictional point is without merit. The Grabers concede that the United States District Court for the Southern District of Indiana originally had jurisdiction over the Lemmons Chapter XI proceeding and the instant adversary proceeding pursuant to the Bankruptcy Act of 1898, as amended. See 11 U.S.C. § 46 (1976). Further, it is undisputed that the Bankruptcy Act governs this adversary proceeding even though the Bankruptcy Act of 1978, 11 U.S.C. §§ 101-1501 (1982), was enacted while the present action was pending. See Bankruptcy Code § 403(a) (1982) (earlier Bankruptcy Act applies during Bankruptcy Code’s transition period from October 1, 1979 through March 31, 1984). The question, therefore, is not whether Judge Brooks had subject matter jurisdiction over the Grabers’ forfeiture petition when it was filed, but whether Judge Brooks lost such jurisdiction upon transfer of the Chapter XI proceeding in bankruptcy to Judge Kearns.
District Judge Brooks did not divest himself of jurisdiction or in any way render himself “disabled” from hearing the merits of this adversary proceeding. Under the Bankruptcy Act and during the Bankruptcy *1067 Code’s period of transition, the courts of bankruptcy comprised separate departments of the district courts. See Bankruptcy Code § 404(a) (1981). When the Lemmons’ Chapter XI proceedings were transferred by Judge Brooks, therefore, Judge Kearns’ bankruptcy court was an administrative department of the District Court for the Southern District of Indiana and not a separate court altogether. In transferring the Chapter XI filing administratively to the bankruptcy division, Judge Brooks did not divest himself of jurisdiction over the adversary proceeding. He remained free to withdraw reference of the Grabers’ petition from the bankruptcy court in much the same way a district court, at any time, could withdraw a case in whole or in part from a referee in bankruptcy under Rule 102 of the Bankruptcy Rules of Procedure.[2]
Judge Brooks retained jurisdiction to enter judgment on the merits of the adversary proceeding. His withdrawal of the case from Judge Kearns was justified because it was Judge Brooks who had heard the testimony and had presided over the trial of the matter. Furthermore, the transfer was administrative in nature. Entry of an express order withdrawing the case from Judge Kearns with notice to the parties and an opportunity for them to be heard was unnecessary; the Grabers’ due process rights were not implicated in Judge Brooks’ administrative act. Judge Brooks had jurisdiction. We turn now to his findings.
III.
The second issue on appeal is whether the district court’s findings of fact and conclusions of law are amply supported by the record. We hold that they are.
The Grabers contended at trial that Lemmons forfeited its rights to enforce the coal mining lease because Lemmons and its receiver had failed to abide by the terms of that lease. Specifically, the Grabers alleged that Lemmons failed to commence mining operations within two years of the date the lease was executed, that Lemmons failed properly to account for the coal mined, and that Lemmons commenced mining operations without procuring a permit to mine the premises.
The court below found for Lemmons, holding that the terms of the mining lease were fully enforceable against the Grabers. The district court entered the following findings of fact and conclusions of law:
FINDINGS OF FACT AND CONCLUSIONS OF LAW AND JUDGMENT
The following parties, having appeared for trial on January 17, 1979, Frank J. Folz, Jr., Receiver, in person, and by counsel, Edward B. Hopper, II; the Official Creditors’ Committee, by Joseph Harrison; the Debtor, by Steven H. Ancel; Plaintiffs, by James W. Bradford and Mark J. Jones; and arguments of counsel having been heard and evidence having been taken, the Court now makes the following Findings of Fact:
1. That a written document known as “Coal Lease” was entered into between *1068 Lemmons & Company, Inc. and Fred and Fannie Graber on the 12th day of June, 1975.
2. That thereafter, mining operations were commenced on June 12, 1979, by the receiver through its Agent, Four Rivers Coal Company, Inc. Said mining operation continued through August 15, 1977, at which time Four Rivers Coal Company, Inc. ceased operating the mining operation for the Receiver.
3. That the Grabers received the following advanced royalty checks from the Receiver or Lemmons & Company:
(a) Check for $1,680 dated June 9, 1976;
(b) Check for $1,200 dated August 18, 1975;
(c) Check for $480 dated August 16, 1977;
(d) Check for $168.75 dated August 16, 1977;
(e) Check for $228.94 dated September 12, 1977;
(f) Check for $76.31 dated October 21, 1977.
4. That the primary reason for the objection by the Plaintiffs to the lease between the Debtor and the Plaintiffs is that the Plaintiffs feel that the lease contains a royalty which is less than the market rate for similar leases in the year 1979.
CONCLUSIONS OF LAW
Based on the foregoing Findings of Fact, the Court concludes the following:
1. That on the date of the filing of the Petition under Chapter XI an executory contract existed between the parties which was enforceable by the Debtor and later the Receiver.
2. That thereafter in the Chapter XI proceeding Plaintiffs accepted funds under the terms of the contract and permitted the mining of coal from the real estate until such time as the average royalty being paid per acre on Indiana coal ground rose from the amount stated in the Lemmons-Graber lease and at this point the Plaintiffs became disenchanted and filed this action.
3. That the executory contract between the parties and the date of filing was affirmed by the Debtor through the Receiver and the Receiver’s actions in mining coal from the real estate and, therefore, all the terms of the lease were enforceable and remained in full force and effect on the date of trial, January 17, 1979.
In reviewing the lower court’s findings, we are guided by Rule 52(a) of the Federal Rules of Civil Procedure. Under Rule 52(a), “[fjindings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.” Fed.R.Civ.P. 52(a). “A finding is ‘clearly erroneous’ when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” United States v. United States Gypsum Co., 333 U.S. 364, 395, 68-S.Ct. 525, 542, 92 L.Ed. 746 (1948). Although a trial court’s findings of fact are entitled to a strong presumption of correctness, see Wattleton v. International Brotherhood of Boiler Makers, Local 1509, 686 F.2d 586, 591 (7th Cir.1982), an appellate court may make an independent examination of ultimate facts and conclusions of law. See Stewart v. General Motors Corp., 542 F.2d 445, 449 (7th Cir.1976).
The Grabers’ principal argument on appeal is that the district court’s finding of fact number 4 and conclusion of law number 2 (which the Grabers assert is in truth a factual finding) are wholly unsupported in the record and thus clearly erroneous. The lower court concluded in these findings that Mr. and Mrs. Graber were motivated more by the perceived inadequacy of their royalty payments than by the lease violations they allege. Specifically, the fourth finding states that the Grabers objected to the lease primarily because it paid a royalty that was less than the market rate for *1069 similar leases in 1979.[3] Conclusion of law number 2 further states that the Grabers accepted royalty payments from the receiver under the terms of the lease until those payments became less than the average royalties being paid per acre in Indiana.
The Grabers insist that finding number 4 and conclusion number 2 form the foundation of the judgment below and the basis of Judge Brooks’ legal conclusion that the lease was not forfeited. They argue that the record contains no evidence of royalty rates for coal mined in Indiana. Furthermore, according to the Grabers, the district court did not have substantial evidence on which to base its finding that the plaintiffs asserted breaches of the lease as a pretext for obtaining higher royalty rates. The lower court having based its decision on these erroneous findings rather than on the issues addressed at trial in regard to the alleged breaches, the judgment below, in the Grabers’ view should be vacated.
Lemmons entered into the lease with the Grabers on June 12, 1975, to mine coal on property owned by the Grabers. The lease provided, among other things, that Lemmons would comply with all state and fed-
eral reclamation laws, and that said lease would exist for a primary term of two years.[4]
The Four Rivers Coal Company, as agent for the receiver, commenced mining on June 10, 1977, two days before the lease expired. In finding of fact number 2, the court stated that mining began on June 12, 1979. The parties agree that this is a typographical error and that the finding may be amended to state the correct date. Thus, mining was commenced within the two-year primary term of the lease.
Although mining was commenced in June 1977, a mining permit was not obtained until October 1, 1977. The Indiana Department of Natural Resources (“DNR”) approved the receiver’s permit application on August 31,1977, and the permit became effective on October 1, 1977, after the receiver posted security with the state DNR. The DNR imposed no penalties for the mining undertaken before the permit was obtained. The evidence of record, therefore, fails to disclose a material violation of the *1070 lease in regard to the procurement of a mining permit.
A review of the record as a whole also reveals that the receiver substantially complied with paragraph 9 of the lease, requiring the lessee to maintain records of the amount of coal mined each day. It is undisputed that the receiver did not furnish “weight tickets” to the Grabers on demand, which tickets would provide a daily measure of coal mined. Instead of using weight tickets, the receiver surveyed the mining area, counted the truckloads of coal mined, and matched the amount of coal calculated against the weight of coal sold. These records were available on a monthly basis for all mines and leaseholds being operated by the receiver. The record contains sufficient evidence to find that the receiver substantially performed the lease requirement dealing with the maintenance of records.
This action is not one in which the facts for the most part are undisputed or documentary in nature. Judge Brooks was called upon to determine the credibility of witnesses. Implicit in his decision is the judgment that this case turned more on the royalty rate owing to the Grabers than on a material breach of the mining lease. The record reveals that after mining was begun, Mr. Graber met for the first time with Mr. James Muir, an employee of Four Rivers Coal Company. Graber expressed his concern with the size of the royalties he was receiving, and he asked if those royalties could be increased.
In reviewing a lower court’s findings of fact, the appellate court does not consider the credibility of the witnesses or the weight that should be given to their testimony. That is the province of the trial court. When the district court makes a factual finding, it must be assumed that conflicting testimony was rejected, even though the trial judge did not expressly state that he refused to credit such testimony. We are not left with the definite and firm conviction that Judge Brooks made a mistake in entering his findings and in con-eluding from them that the mining lease was enforceable.
In so holding, we treat conclusion of law number 2 as a factual determination. That the district court denoted such a finding as a conclusion of law is not reversible error. The labels of fact and law assigned by the trial court are not controlling. Furthermore, findings on every issue presented in a case are unnecessary if the trial court has found such essential facts as lay a basis for the decision. The district court’s failure to make explicit findings in regard to the alleged breaches of the lease does not itself require either reversal or remand. We believe that in this case a complete understanding of the issues is afforded by the record and by the district court’s other findings. Rule 52(a) requires that the findings of the lower court be sufficient to indicate the factual basis for the ultimate conclusion. That standard has been met here.
IV.
For the reasons expressed above, the judgment of the district court is affirmed.

. Rule 63 states:
If by reason of death, sickness, or other disability, a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these rules after a verdict is returned or findings of fact and conclusions of law are filed, then any other judge regularly sitting in or assigned to the court in which the action was tried may perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial.

. Rule 102 of the Rules of Bankruptcy Procedure provides:
Rule 102.
REFERENCE OF CASES; WITHDRAWAL OF REFERENCE AND ASSIGNMENT
(a) Reference. Upon the filing of a petition the clerk shall refer the case forthwith to a referee or, if a local rule so provides, to more than one referee concurrently. Thereafter all proceedings in the case shall be before the referee except as otherwise provided by subdivision (b) of this rule, by Rules 115(b) and 920, by § 2a(15) of the Act when a complaint seeks an injunction to restrain a court, by § 43c of the Act when the office of the referee is vacant, and by the provisions in the Act and the rules in Part VIII governing appeals from judgments of the referee.
(b) Withdrawal of Reference and Assignment. The district judge may, at any time, for the convenience of parties or other cause, withdraw a case in whole or in part from a referee and either act himself or assign the case or part thereof to another referee in the district.
The Bankruptcy Act and the Rules of Bankruptcy Procedure established thereunder apply here. Those rules now have been replaced by the bankruptcy rules adopted for use under the Bankruptcy Code.

. We regard this reference to the year 1979 as simply a typographical error. The context of this case suggests that the finding should be amended to state 1977.

. The lease provided in part:
2. This lease shall remain in force for a primary term of two (2) years and as long thereafter as coal is mined in sufficient quantity to pay to Lessors the royalty provided for herein or as long as advance royalties are paid. If operations are not commenced within 60 days from the above date, Lessee shall pay to the Lessor an advance royalty payment of $10.00 per acre per year, and One Dollar per acre up on [sic] signing said lease.
* * * * * *
7. The Lessee agrees to pay to Lessor as rent and royalty for said leased premises and as royalty for coal as follows: the sum of 0.75 cents per ton for each two thousand (2,000) pounds of all cleaned coal mined and sold from said leased premises. Railroad trackscale or truckscale weights to govern all settlements. The Lessor shall have the right to inspect all weights and methods of weighing.
8. Royalties due under this lease shall be paid on the 25th day of each month succeeding the month during which coal is mined.
9. It is further agreed and understood that the Lessee will keep a true record at its office and that these records shall be open to the inspection of the Lessor or his agents at all reasonable hours, showing the amount of coal removed from said mine each day.
******
11. It is a condition of this lease that time is an essential element thereof and that the coal is to be removed with all possible dispatch as above set out, once the Lessee has entered in and upon the mining of the same, and upon the abandonment of said mine by the Lessee, all right, title and interest in and to said lease shall immediately revert to the Lessor after Lessee has had a reasonable time to remove any equipment, buildings, etc., remaining on this property at the time of the abandonment.
12. It is further agreed and understood that all agreements and terms of this lease are to be construed as conditions, and if the Lessee fails to carry out such conditions of this lease the Lessor shall notify the Lessee of such failure in writing and Lessee shall have 60 days to correct any deficiency, if such deficiency is not corrected within 60 days, then Lessor shall have the right to declare a forfeiture of said lease and all right, title and interest of the Lessee is [sic] and to this lease.
13. This lease shall be binding upon the parties hereto, their heirs, assigns, administrators and executors and all parties claiming under them.