Mitchell A. **STAROSTKA**, Plaintiff,

v.

**STATE OF ILLINOIS, DEPARTMENT OF PUBLIC AID**, Defendant.

No. 86 C 8311.

United States District Court, N.D. Illinois, E.D.

June 29, 1987.

Henry T. Synek, Chicago, Ill., for plaintiff.

Laurel Black Rector, Barbara L. Greenspan, Illinois Atty. General's Office, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

This is a Title VII action brought by Mitchell Starostka ("Plaintiff") claiming racial discrimination by the State of Illinois, Department of Public Aid ("Defendant" or "IDPA"). Plaintiff claims he was denied a promotion * because he is white. Defend-

---

* Plaintiff also argues that his resignation amounted to a constructive discharge. We find no merit to this argument. Constructive discharge occurs when an employer undertakes a course of conduct which makes the employee's working conditions so unpleasant that any reasonable person in the employee's position would feel compelled to resign. *Kellner v. General Refractories Co.*, 631 F.Supp. 939, 946 (N.D.Ind. 1986) (Kanne, J.). By no stretch of the imagination could Defendant's conduct be construed as so onerous that a reasonable person would feel compelled to resign. We therefore consider

ant now moves to dismiss the complaint or, alternatively, for summary judgment. Defendant attaches affidavits and documents to its motion, and Plaintiff responds with counter-affidavits and more documents. We shall construe the motion as one for summary judgment, Fed.R.Civ.P. Rule 12(b), and enter summary judgment for Defendant.

Promotion decisions within the IDPA are controlled by the terms of labor contracts entered into by the State of Illinois and the American Federation of State, County, and Municipal Employees. These contracts provide, *inter alia*, that notices of vacancies for all positions be posted for 10 working days at various locations in the county. The posted notice informs employees that they may bid for the promotion by submitting a bid form within a specified time. When the bidding period ends, the supervisor will list the names of the bidders and the successful bidder will be chosen from that list by the State's personnel department. Generally, the successful bidder for a promotion is the most senior bidding employee in the job classification just below the vacancy. The seniority rule is not absolute, however. The relevant provision in the labor contract governing the applicability of seniority in this case states as follows:

> In cases of promotion ... seniority shall prevail unless the less senior employee has demonstrably superior skill and ability to perform the work required in the position classification.

Plaintiff's Exh. 11, p. 1.

The term "demonstrably superior" has been interpreted by a grievance arbitrator as requiring a junior employee to "have more than just greater ability than the more senior employee; he or she must stand 'head and shoulders' above that employee. There must be a 'demonstrable definite, distinct, substantial and significant difference' between the employees." *Id.*, p. 3.

From August 10, 1981 through his resignation September 24, 1985, Plaintiff was a Clerk II in Defendant's Uptown Local Office. A vacancy opened up for a Clerk III in the Uptown Office in the Finance Department, effective September 16, 1985. Defendant duly posted a notice announcing the vacancy from August 1 to August 14, 1985. Plaintiff submitted a bid form for the promotion to the Clerk III position.

Oris Washington, another Clerk II in the Uptown Local Office who is black, also submitted a bid form for the Clerk III vacancy. Washington was senior to Plaintiff because he had begun working for Defendant seven weeks earlier than Plaintiff. Washington, in fact, was the most senior bidder for the Clerk III position.

Washington withdrew his bid and waived consideration for the Clerk III position "because I am being promoted to Caseworker I." Plaintiff's Exh. 6. When Washington withdrew his name from consideration, Plaintiff became the most senior bidder for the Clerk III position. In recognition of that fact, the Administrator of the local office selected Plaintiff for the Clerk III position. Before Plaintiff's promotion could be processed by the personnel department however, it was learned that Washington's promotion to Caseworker I would not go through because Washington had not taken the required promotional examination. Washington orally voided his waiver and was promoted to the Clerk III position rather than Plaintiff.

Approximately one week later, Plaintiff tendered his resignation effective two weeks hence, stating "[s]ince it is impossible for me to get promoted from my present classification of Clerk II to Clerk III, having been employed by this office since August 10, 1981, and, since I do not intend to stay at this level indefinitely, I have chosen to try my luck elsewhere." Plaintiff's Exh. 2.

Plaintiff, believing he was denied his promotion for racial reasons, filed a complaint with the Illinois Department of Human Rights. He received a right to sue letter and brought the instant Title VII action.

Title VII declares it an unlawful employment practice for an employer to deny an

---

only Defendant's failure to promote Plaintiff as possible employment discrimination.

employee a promotion on the basis of his race. 42 U.S.C. § 2000e–2(a)(1); *Stewart v. General Motors Corp.*, 542 F.2d 445 (7th Cir.1976). The now familiar three-step procedure for presenting evidence in a Title VII case requires Plaintiff to, first, make out a *prima facie* case of discrimination. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). After Plaintiff has established a *prima facie* case, the burden shifts to Defendant to produce admissible evidence that Plaintiff was denied the promotion for a legitimate, nondiscriminatory reason. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Plaintiff then has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by Defendant were not its true reasons, but were a pretext for discrimination. *McDonnell-Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. The ultimate burden of persuading the trier of fact that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

We need not decide whether Plaintiff has met his burden of establishing a *prima facie* case because Defendant has articulated a legitimate, nondiscriminatory reason for its actions. *Tulloss v. Near North Montessori School, Inc.*, 776 F.2d 150, 155 (7th Cir.1985). The reason articulated by Defendant is that Washington was promoted because he had more seniority than Plaintiff. Title VII protects the operation of a seniority system unless it was adopted with the intent to discriminate. 42 U.S.C. § 2000e–2(h); *Teamsters v. United States*, 431 U.S. 324, 352–53, 97 S.Ct. 1843, 1863–64, 52 L.Ed.2d 396 (1977). Plaintiff, however, asserts that this proffered reason is pretextual. Thus our focus is on the third step of the *McDonnell-Douglas* approach. *See Box v. A & P Tea Co.*, 772 F.2d 1372, 1378 (7th Cir.1985).

This case is before us on Defendant's motion for summary judgment:

> As a general principle, questions of motive and intent are inappropriate for summary judgment. Consequently, a defendant in a discrimination case is not entitled to summary judgment if the plaintiff submits evidence from which a court can reasonably infer that the articulated legitimate reason is, in fact, a pretext for discrimination. But a general principle is not a universal rule, and a district court should grant summary judgment if, viewed in the light most favorable to the plaintiff, the evidence fails to demonstrate a genuine issue of material fact as to pretext.

*Box*, 772 F.2d at 1378.

■ Plaintiff presents several arguments in an attempt to demonstrate the existence of a genuine issue of material fact. First, Plaintiff argues that Washington did not withdraw his waiver and thus could not have been considered for the Clerk III position. However, Plaintiff presents no evidence to oppose the statement in the affidavit of Robert Bowman, the Uptown Local Office Administrator, that Washington voided his waiver when he learned he had not taken the required promotional examination to become a Caseworker I. Bowman Affid. ¶ 8. Plaintiff merely states that no document evidencing the withdrawal is in the record. Plaintiff does not dispute that an oral waiver withdrawal is valid, and we find nothing inconsistent between Bowman's statement and the absence of an evidencing document. There is no genuine issue on the question whether Washington validly voided his waiver.

■ Plaintiff's second argument is that Washington's waiver did not say "on condition that I be promoted to Caseworker I." This is true; nevertheless, the clear import of Washington's waiver is that the only reason he waived consideration for the Clerk III position is the anticipated promotion to Caseworker I. Defendant clearly interpreted the waiver as such. The transmittal form from Defendant's local office to its regional office expressly states that "[a]lthough [Plaintiff] is not the senior bidder, we are forwarding a waiver from Mr. Oris Washington, who was the senior bidder, but Mr. Washington is being pro-

moted to a Caseworker I." Plaintiff's Exh. 8. If Washington had not anticipated a promotion to Caseworker I, he would not have submitted a waiver. We find no genuine issue of fact on the conditional nature of Washington's waiver.

■ Plaintiff next argues that we may infer discriminatory intent from the fact that the Clerk III position was in the Financial Department, which allegedly employed seven blacks and one Hispanic, but no whites. We find such an inference unwarranted. Plaintiff presents no admissible evidence demonstrating that the racial composition of the Financial Department was as he claimed. Moreover, Plaintiff presents no evidence that employees of the Financial Department had any control over who was selected as the new Clerk III. Nor does Plaintiff explain why, if it wanted the Financial Department to remain all black, Defendant set the wheels in motion to promote Plaintiff to that position. We find Plaintiff's argument inferring discriminatory intent from the racial composition of the Financial Department to be without merit.

■ Plaintiff's primary argument in support of his theory that Defendant's offered reason for denying him the promotion was pretextual is that Plaintiff was in fact more qualified for the promotion than Washington. According to Plaintiff, Defendant would have chosen Plaintiff for the promotion had Defendant not possessed a discriminatory motive. To bolster his contention that he was better qualified than Washington, Plaintiff submits copies of documents from his and Washington's personnel files.

Upon examination of Plaintiff's personnel records, it is clear that he was fully qualified to receive a promotion. Indeed, in many ways, Plaintiff was an outstanding employee. Plaintiff took courses at local community colleges to improve his skills; he had many good suggestions for improving the efficiency of the office. He was never tardy and used his acquired benefit time conservatively. There was, however, one annual review which reported that "[Plaintiff's] efforts to promote a cordial

work climate or assist other employees would bear improvement." Plaintiff's Exh. 4–E, p. 3. On the whole, though, Plaintiff's record shows him competent in all areas and outstanding in some.

Examination of Washington's records reveals a similarly competent employee. Washington consistently performed his job tasks well and was well liked by his colleagues. Washington did have a problem with punctuality—he was often late to work. On one occasion, a conference was held to discuss Washington's tardiness. On the whole, however, Washington performed his job competently and was qualified to receive a promotion.

The evidence does not demonstrate that Plaintiff was "head and shoulders" above Washington. Plaintiff may have been a better employee than Washington; nevertheless, under the promotion system used by Defendant, the more senior employee gets the promotion even if the junior employee is better. "Better than is not quite good enough!" Plaintiff's Exh. 11, p. 3. Even if the difference in seniority between the two men was "miniscule," Washington was clearly senior. The evidence in Plaintiff's personnel file, even viewed in the light most favorable to Plaintiff, is insufficient to create a genuine issue of fact as to Plaintiff's entitlement to the promotion.

Even if we decided Plaintiff was much more qualified than Washington, we still would not draw the inference that seniority was merely a pretext for discrimination. The issue is not so much whether Plaintiff was demonstrably superior; the issue is whether Defendant knew he was superior but nevertheless promoted Washington because of his race. If Plaintiff proves he was a clearly superior candidate to Washington, unless he can show a discriminatory intent, all he has established is a violation of the collective bargaining agreement. Such violation is a grievance arbitrable through contractually provided procedures. Plaintiff has not presented any evidence of discriminatory intent in support of his Title VII claim.

There is no evidence that the chain of events leading to the denial of Plaintiff's

promotion was taken with racially discriminatory intent. Defendant planned to promote Plaintiff, but those plans fell through. Plaintiff surely was disappointed, but there simply is no evidence to support his claim of racial discrimination. Finding no genuine issue of material fact on the question of discriminatory intent, we grant Defendant's motion and enter summary judgment for the State of Illinois Department of Public Aid.